IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RANDEE A. DUNKEL,

                Plaintiff,

    v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

_____Defendant.

Case No. 6:15-cv-01664-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

      Plaintiff Randee Dunkel brings this action for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying her application for Title II

Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). All parties have

consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance

with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the

Commissioner's decision is reversed and this case is remanded for further proceedings.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

This case has a long procedural history and pertains to a period that transpired approximately 20 years ago, as the date last insured lapsed on December 31, 1998. See 20 C.F.R. §§ 404.101(a), 404.315 (claimant must have "insured status" in order to qualify for DIB). On October 15, 2009, plaintiff applied for DIB, alleging disability beginning on the date last insured. Tr. 118-19. Her application was denied initially and upon reconsideration. Tr. 68-75. On November 9, 2011, a hearing was held before an Administrative Law Judge ("ALJ"), during which plaintiff amended her alleged onset date to January 1, 1995. Tr. 21-63. On November 15, 2011, the ALJ issued a decision finding plaintiff not disabled between the amended alleged onset date and the date last insured. Tr. 11-20. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-4.

On April 16, 2013, the Honorable James A. Redden found that the ALJ erred in disposing of plaintiff's claim at step two by finding that none of her impairments were medically determinable during the relevant time-frame. Tr. 687-98. Accordingly, Judge Redden remanded the matter for further proceedings. Id.

On April 27, 2015, a second administrative hearing took place, wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE") and medical expert ("ME"). Tr. 624-52. On May 19, 2015, the ALJ issued a second decision finding plaintiff not disabled under the Act. Tr. 653-69. Plaintiff subsequently commenced this lawsuit.

## STATEMENT OF FACTS

Born on March 12, 1950, plaintiff was 44 years old on the amended alleged onset date of disability and 55 years old at the time of the second hearing. Tr. 118. Plaintiff graduated from

high school and attended business school. Tr. 136. She worked previously as an office manager. Tr. 59-60. Plaintiff alleges disability due to multiple sclerosis, fibromyalgia, depression, arthritis, and diverticulitis. Tr. 130.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 658. At step two, the ALJ determined that plaintiff's obesity, degenerative disc disease, myofascial pain syndrome, and possible genitofemoral neuropathy were medically determinable but not severe prior to December 31, 1998. Tr. 658-59. As such, the ALJ did not continue the sequential evaluation process and concluded plaintiff was not disabled from the alleged onset date through the date last insured. Tr. 662.

Page 4 - OPINION AND ORDER

## DISCUSSION

This case hinges on whether there is sufficient evidence relating to plaintiff's conditions to establish that they imposed more than a minimal effect on her ability to perform basic work activities prior to the date last insured.

## I.    Step Two Finding

Plaintiff argues that the ALJ erred at step two by: (1) affording less weight to medical evidence from James Morris, M.D.; (2) discrediting her subjective symptom statements; and (3) rejecting the lay testimony of her husband, Boris Dunkel.

At step two, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is both medically determinable and severe. 20 C.F.R. § 404.1520(c). An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence, such as "signs, symptoms, and laboratory findings." SSR 96-4p, available at 1996 WL 374187; 20 C.F.R. § 404.1513(a). An impairment is severe if it significantly limits the claimant's ability to do basic work activities, which are defined as "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521; Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).

The step two threshold is low; the Ninth Circuit describes it as a "de minimus screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); see also SSR 85-28, available at 1985 WL 56856 ("[g]reat care should be exercised in applying the not severe impairment concept," such that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process . . . should be

continued"). In other words, an impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." SSR 85-28, available at 1985 WL 56856.

### A. Medical Evidence

Plaintiff contends that the ALJ improperly discredited treating Dr. Morris's medical opinion. There are three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are afforded the most weight. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citation omitted); see also SSR 96-2p, available at 1996 WL 374188 ("[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight"). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Id.

In May 1999, four months after the date last insured expired, plaintiff was evaluated by Dr. Morris, a chronic pain and rehabilitation specialist, at the request of Dr. Karasek, a neurologist. Tr. 356. Dr. Morris's initial assessment consisted of an examination and clinical interview; he also reviewed plaintiff's prior records, including chart notes from Drs. Hacker, Karasek, and Hansen, and an "MRI of the pelvis and lumbosacral spine."[1] Tr. 356-59. Plaintiff reported chronic low back and groin pain, which "began about four years ago with no single

---

[1] Although these records were generated prior to the date last insured, they are not in the transcript because "the doctors did not keep them and most of the doctors had retired." Pl.'s Opening Br. 16 n.4 (citing Tr. 31). Accordingly, it is undisputed Dr. Morris's May 1999 evaluation is the only evidence in the record that is contemporaneous to the date last insured.
Page 6 - OPINION & ORDER

precipitating event." Tr. 356. Plaintiff also reported depression, mood swings, memory issues, numbness, and chronic fatigue. Tr. 357. Dr. Morris noted tenderness in the genitofemoral nerve and trigger points in the left abdominal rectus, iliopsoas/iliacus, quadratus lumborum, and gluteus medius; the remainder of his examination was unremarkable. Tr. 357-58. Dr. Morris diagnosed plaintiff with "degenerative lumbosacral disc disease, myofascial pain syndrome, and probably some genitofemoral neuropathy of unclear etiology." Tr. 358.

In March 2001, plaintiff presented to Dr. Morris with worsening musculoskeletal pain, fatigue, and back pain radiating down her legs. Tr. 554. Dr. Morris noted myofascial banding and triggering, and diagnosed intractable low back pain, depression, and degenerative lumbosacral spine disease. Id.

In May 2001, Dr. Morris noted an asymmetric neurologic examination, with signs of an upper neuron lesion, and referred plaintiff to a neurologist to check for multiple sclerosis. Tr. 552.

In June 2001, plaintiff reported "increasing groin pain, achiness, and some trouble walking." Tr. 550. Dr. Morris noted that she was also "struggling with her low back pain, radicular symptoms, and depression." Id.

In August 2001, Dr. Morris reviewed plaintiff's recent MRI, which indicated progressive degenerative changes in the lumbar spine. Tr. 548.

In October 2001, Dr. Morris informed plaintiff that her recent brain MRI revealed demyelinating lesions, which could be indicative of multiple sclerosis. Tr. 546-47. A neurologist, Kathleen Wilken, M.D., ultimately confirmed plaintiff's diagnoses of multiple sclerosis in April 2002. Tr. 464.

Page 7 - OPINION & ORDER

Thereafter, plaintiff continued to receive regular care from Dr. Morris and Dr. Wilken. Tr. 242-355, 364-462, 497-555, 561-72. Dr. Morris denoted at various points in plaintiff's chart that she was unable to work due to her impairments. See, e.g., Tr. 247 (Dr. Morris opining in January 2011 that plaintiff "has been disabled since at least 1998, only working part time for her husband at home at her own pace and with generous accommodations"), 304 (Dr. Morris stating in June 2008 that plaintiff's "condition is disabling [and] permanent").

In January 2011, Dr. Morris authored a letter in support of plaintiff's DIB application. Tr. 241. He listed plaintiff's diagnoses as fibromyalgia, degenerative osteoarthritis, intractable groin pain with genitofemoral nerve entrapment, multiple sclerosis, and degenerative spine disease. Id. He then wrote:

> The medical conditions began affecting Mrs. Dunkel in 1995 or before. She has been unable to hold a job outside of the home since I met her. Her condition is expected to last until indefinite. No cure or palliative care is expected to improve her functional capacities. Mrs. Dunkel will be unable to return to work in the future and her condition is permanent. Deterioration in her condition due to advancing multiple sclerosis is likely.

> Restrictions: limited sitting, standing, walking or reaching. Cannot lift more than 10 lb occasionally. Unable to bend, twist, stoop. Unable to withstand stress. Flare-ups in condition will cause disability and inability to work in any capacity on an average of 4-6 days per month.

Id.

The ALJ afforded "little weight" to the January 2011 opinion of Dr. Morris because "the objective findings [from 1999 were normal and therefore] do not establish the presence of any limitations that would relate back to the time period at issue." Tr. 661. The ALJ also found that, "given that Dr. Morris did not start seeing [plaintiff] until 1999, he was not in a position to issue an opinion as to her functioning in 1998." Tr. 661-62.

Initially, the fact that Dr. Morris did not begin treating plaintiff until four months after the date last insured is not a legally valid reason to reject his retrospective opinion regarding her functioning. See Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1461 n.5 (9th Cir. 1995) (claimant may establish "continuous disabling severity" beginning on or before the date last insured through retrospective evidence that post-dates the adjudication period); see also Smith v. Bowen, 849 F.2d 1222, 1225-26 (9th Cir. 1988) ("medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition") (collecting cases). Indeed, Judge Redden reversed the ALJ's previous decision in regard to a similar issue. See Tr. 689-93 (rejecting the Commissioner's contention that the ALJ did not need to accept Dr. Morris's January 2011 opinion because his "retrospective assessment [was] not substantiated by medical evidence relevant to the period in question," specifically noting Dr. Morris's findings upon exam in 1999, as well as his review of chart notes and imaging studies that pre-dated the date last insured); see also Tr. 36-38, 162-74 (plaintiff's journal entries from June 1996 through October 1997 detailing her significant back pain, groin pain, and fatigue).

Likewise, Dr. Morris's May 1999 examination is not a basis to afford less weight to his January 2011 opinion.[2] Contrary to the ALJ's conclusion, Dr. Morris's findings in 1999 were not

---

[2] The Commissioner's reliance on Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995), is misplaced. In Johnson, the ALJ articulated a number of reasons for rejecting a treating doctor's post-date last insured opinion that the claimant was disabled – including that it was "conclusory" and "not substantiated by medical evidence relevant to the period in question." Johnson, 60 F.3d at 1432. Specifically, the ALJ in Johnson noted that the doctor's opinion "contradicts his own contemporaneous finding" from within the adjudication period that the claimant could work. Id. at 1433. Here, Dr. Morris's 2011 opinion is compatible with, as opposed to contradicted by, his 1999 examination. In addition, other evidence that post-dates the date last insured reflects that plaintiff's multiple sclerosis existed on or before the alleged onset date, and caused or contributed to some of her allegedly disabling symptoms. See, e.g., Tr. 629-30, 634 (ME testifying at the 2015 hearing that plaintiff's multiple sclerosis and fibromyalgia were "severe"

Page 9 - OPINION & ORDER

all normal. Rather, he assessed trigger points and tenderness precisely in the areas in which

plaintiff described limitation. See, e.g., Tr. 358 (Dr. Morris informing plaintiff in 1999 that "[w]e

don't know all the causes of your pain [but] you have some tight muscles in the back, abdomen,

and pelvis [and] may have some problems with the way the nerve signals are processed in the

central nervous system"). Based on this examination, in conjunction with his review of the other

objective medical evidence, Dr. Morris diagnosed plaintiff with a number of conditions that he

later and repeatedly opined were disabling prior to the date last insured. Regardless of whether it

is sufficient to entitle plaintiff to benefits, the aforementioned evidence clearly establishes the

existence of impairments that have more than than a minimal effect on plaintiff's ability to work.

The ALJ's evaluation of Dr. Morris's opinion is reversed.

### B.      Plaintiff's Testimony

Plaintiff argues that the ALJ wrongfully discredited her subjective symptom testimony

concerning the severity of her impairments prior to the date last insured. When a claimant has

medically documented impairments that could reasonably be expected to produce some degree of

the symptoms complained of, and the record contains no affirmative evidence of malingering,

"the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering

specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281 (citation omitted).

A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . .

testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v.

Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to

permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's

testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the

---

prior to the date last insured and that "fatigue is one of the major symptoms" of those
conditions).

"ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, plaintiff testified that she was unable to work due to groin pain, fatigue, and concentration and memory problems. Tr. 33-34, 637. Plaintiff reported that these symptoms began significantly impacting her in "about 95' or 96'." Tr. 33, 637-38. Additionally, she endorsed lingering pain in her back following surgery in 1996. Tr. 640. During the mid-to-late 1990s, plaintiff began working part-time as an office manager at her husband's dental equipment repair business. Tr. 635-36. At some point thereafter, she stopped doing "his bookkeeping[,] the phone and the invoicing and stuff like that," and presently only "pay[s] the bills," which takes approximately 10 hours per week. Id.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her statements regarding the extent of these symptoms were not fully credible[3] due to her work after the alleged onset date and the lack of corroborating medical evidence. Tr. 659-61.

Notably, the ALJ found that plaintiff's credibility was undermined by her employment at her husband's business. Tr. 660. The record reflects that plaintiff worked only part-time,

_____

[3] The Court notes that, pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. See SSR 16-3p, available at 2016 WL 1119029 (superseding SSR 96-7p). The ALJ's May 2015 decision was issued almost one year before SSR 16-3p became effective and there is no binding precedent interpreting this new ruling or whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision). Because the ALJ's findings in regard to this issue fail to pass muster irrespective of which standard governs, the Court need not resolve this issue.

Page 11 - OPINION & ORDER

although there is some discrepancy regarding the number of hours per week she worked during the adjudication period. Compare Tr. 28-29, 636 (plaintiff testified she worked no more than 10 to 15 hours per week after the amended alleged onset date), with Tr. 51 (Mr. Dunkel testified plaintiff worked 30 to 35 hours per week prior to 1999). Regardless, plaintiff was not compensated, and both plaintiff and her husband testified that her impairments adversely impacted the quality of her performance. It is undisputed this work did not satisfy the ALJ's step-one inquiry. Tr. 30, 49-53, 56, 658. In fact, plaintiff was unable to continue overseeing the majority of her office-related responsibilities due to her alleged impairments. Tr. 33, 41-42, 50-51, 638-40. The fact that plaintiff worked part-time, for a family member, and struggled to complete that work in a satisfactory manner, does not impugn her credibility. See Lester, 81 F.3d at 833 ("[o]ccasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability").

The ALJ also found "there are no objective findings to establish that her impairments were severe" because Dr. Morris's May 1999 exam was "essentially normal, suggest[ing] that her impairments were not as debilitating as alleged." Tr. 660-61. "[W]hether the alleged symptoms are consistent with the medical evidence" is a relevant consideration, but "an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted). In other words, the ALJ may not rely exclusively on the lack of corroborating medical evidence to discount a claimant's testimony where, as here, the ALJ's other reasons for finding the claimant not credible are unsupported by substantial evidence.

Regardless, the ALJ mistreated the medical evidence from Dr. Morris's May 1999

assessment. The ALJ disregarded plaintiff's subjective complaints because she had a "full range

of motion," "no significant tender points," a "negative straight-leg raising test," and "full motor

strength, intact reflexes, and intact sensation in her upper and lower extremities." Tr. 660. Yet

these findings have no bearing on whether plaintiff suffered from pain or fatigue that

significantly limited her ability to perform basic work activities. See Light v. Soc. Sec. Admin,

119 F.3d 789, 792 (9th Cir. 1997) ("a claimant need not present clinical or diagnostic evidence to

support the severity of his pain"); see also Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir.

1990) ("it is the very nature of excess pain to be out of proportion to the medical evidence").

This is especially true in light of the fact that, as discussed in section I(A), the ALJ failed to

acknowledge the portions of the record which were indicative of severe impairment prior to the

date last insured. Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing

of record material" was "not entirely accurate regarding the content and tone of the record" and

did not support an adverse credibility finding).

In sum, the ALJ failed to provide a clear and convincing reason, supported by substantial

evidence, for finding plaintiff not fully credible. The ALJ's credibility finding is reversed.

### C.    Lay Testimony

Plaintiff asserts the ALJ neglected to provide a legally sufficient reason, supported by

substantial evidence, to reject the statements of Mr. Dunkel. Lay testimony concerning a

claimant's symptoms or how an impairment affects the ability to work is competent evidence

that an ALJ must consider. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citations

omitted). The ALJ must provide "reasons germane to each witness" in order to reject such

testimony. Id. (citation and internal quotation omitted).

Page 13 - OPINION & ORDER

Mr. Dunkel testified at the first administrative hearing. Tr. 46-57. He also offered written testimony regarding plaintiff's impairments in November 2011. Tr. 180-83. In each instance, Mr. Dunkel described how plaintiff's ability to function began to deteriorate in the early 1990s. Tr. 49, 180-81. He explained that plaintiff was employed at his dental equipment repair company as an office manager and, by the late 1990s, was having significant professional problems, including confusion, calculation errors, and misplaced payments. Tr. 49, 51, 181. As a result of these problems, he lost business and was required to reduce plaintiff's responsibilities. Tr. 50-51, 181-82. He also observed that she had physical difficulty taking out the trash, doing the dishes and laundry, and dusting. Tr. 52-54, 180-82.

The ALJ discredited Mr. Dunkel's statements because "his testimony that [plaintiff] was able to work approximately thirty-five hours a week up until 1999 is inconsistent with his statement that [plaintiff's] conditions had become severe in the early 1990's such that her condition had deteriorated and she was no longer able to do household chores." Tr. 662.

When read in context, Mr. Dunkel's statements are not internally inconsistent. Mr. Dunkel's testimony related to plaintiff's inability to complete household chores revealed limitations due to physical impairment. Conversely, his testimony concerning plaintiff's poor workplace functioning was based predominantly on her mental impairments. This distinction is critical, as both plaintiff and the VE testified that plaintiff's past work as office manager was sedentary and skilled, with essentially no lifting – i.e., it was work that was mentally demanding but "physically easy." Tr. 29, 41, 645. Moreover, the medical evidence demonstrates that some of plaintiff's conditions are degenerative and therefore, "by definition, progressively worsen . . . over time." Tr. 241, 247, 304, 356-58, 546-55; Daley v. Colvin, 2014 WL 5473797, *9 (D. Or. Oct. 28, 2014) (citations and internal quotations omitted). Because the alleged contradictions

Page 14 - OPINION & ORDER

identified by the ALJ are not supported by the record before the Court, the ALJ erred in rejecting Mr. Dunkel's testimony.

## II.    Remand

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir.), cert. denied, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1100 (9th Cir. 2014). A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. Garrison v. Colvin, 759 F.3d 995, 999 (9th Cir. 2014). The United States Court of Appeals for the Ninth Circuit articulates the rule as follows:

> If the court finds [legal] error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.
>
> If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next

consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion, however. District courts retain flexibility in determining the appropriate remedy and a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.

Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

As discussed herein, the ALJ made multiple errors in evaluating step two. Given the long procedural history of this case, as well as the remote date last insured, the Court questions why the ALJ did not complete the sequential evaluation by making alternate findings. Nevertheless, a court may not award benefits simply because the Commissioner makes a similar mistake on remand. See Strauss, 635 F.3d at 1138-39 ("[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be").

The record before this Court is ambiguous regarding the onset and extent of plaintiff's allegedly disabling impairments. On the one hand, plaintiff endorsed debilitating fatigue, pain, and concentration and memory problems beginning in the mid-1990s. The retrospective symptoms plaintiff reported in applying for benefits are consistent with the contemporaneous journal entries she made in 1996 and 1997. On the other hand, both plaintiff and her husband testified that she continued working part-time, potentially up to 35 hours per week, during the adjudication period. But see Tr. 128 (plaintiff's Disability Report reflecting that she "work[ed]

Page 16 - OPINION & ORDER

full-time as a business office manager for her husband's company through 1999"). While not dispositive, the Court also notes plaintiff's testimony is vague concerning when precisely she became unable to work, and that she started working for her husband's business after the amended alleged onset date and ceased working at her previous position for reasons unrelated to her impairments. Tr. 43-44, 128, 635, 638.

Further, although the ALJ did not rely on this reason in his decision, the Court notes that Dr. Morris's 2011 letter is inconsistent with his treatment records. For instance, the only aspect of his letter that is retrospective is his statement that "[f]ibromyalgia, degenerative osteoarthritis, intractable groin pain with genitofemoral nerve entrapment, multiple sclerosis, and degenerative spine disease . . . began affecting Mrs. Dunkel in 1995 or before." Tr. 241. Yet plaintiff did not present with any clinical signs of fibromyalgia until several years after the date last insured. See Tr. 546 (plaintiff presented with a sufficient number of positive fibromyalgia tender points for the first time in October 2001); see also SSR 12–29, available at 2012 WL 3104869 (outlining the diagnostic criteria for fibromyalgia). As such, Dr. Morris did not diagnose that condition as part of his May 1999 evaluation. Tr. 356-58. Finally, accepting plaintiff's assertion that medical records from the dispositive period were unobtainable, the fact remains that, after her initial evaluation with Dr. Morris in May 1999, there is no evidence that she sought further treatment for her allegedly disabling impairments for nearly two years, until March 2001. Tr. 554-55.

In light of these ambiguities, further proceedings are required to resolve this case. Upon remand, the ALJ must consult an ME who specializes in the conditions that plaintiff alleges are

disabling[4] to determine the onset date of any significant symptoms and/or functional limitations,

and, if necessary, define plaintiff's RFC and obtain additional VE testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED and this case

is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this **26th** day of July 2016.

Jolie A. Russo
United States Magistrate Judge

---

[4] The ME who testified at the 2015 hearing had not reviewed salient aspects of the record and "didn't regularly deal with [multiple sclerosis] patients." Tr. 632-34.